(C. D. 2013)

C. S. EMERY & COMPANY *v.* UNITED STATES

United States Customs Court, First Division

(Decided June 26, 1958)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Edward N. Glad* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Richard H. Welsh*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: The merchandise the subject of this protest is described on the invoice as "White Pine Lumber D2S & M." It was assessed with duty at the rate of 16⅔ per centum ad valorem under the provision in paragraph 412 of the Tariff Act of 1930, as modified by the Presidential proclamations reported in T. D.'s 52373 and 52476, for manufactures of wood, not specially provided for.

The plaintiff contends that the merchandise at bar is not a manufacture of wood, but is wood or lumber material. The protest as originally filed claimed that the merchandise was properly classifiable under the provision in paragraph 401 of the Tariff Act of 1930 as "sawed lumber * * * not specially provided for; * * * if of * * * pine." This provision contains the statement that "in estimating board measure for the purposes of this paragraph no deduction shall be made on account of planing, tonguing, and grooving," so that, implicitly, the sawed lumber covered by the provision may have

had performed on it processes of planing, tonguing, and/or grooving without taking the lumber out of the provision for sawed lumber. The rate claimed is 25 cents per thousand feet under the said paragraph 401, as modified by the Presidential proclamation reported in T. D. 51802.

By amendment of the protest, claims for duty at the rate of 10 per centum ad valorem were added under the provision for wood, unmanufactured, not specially provided for, in paragraph 405 of the Tariff Act of 1930, as modified by the Presidential proclamation reported in T. D. 51802, or for nonenumerated manufactured articles in paragraph 1558, as modified by the Presidential proclamations reported in T. D.'s 52739 and 52827.

The merchandise involved is what is called "knotty pine paneling" and was produced by using sawed boards of the requisite width and kiln-drying the same. The boards were then cut off square at each end, and then put through a planing machine which had multiple knives so adjusted as to plane two sides of the board, place a tongue on one edge and a groove in the other edge, and bevel both edges.

It appears that the knives in the planing machine used in producing the merchandise involved in this importation were not in good order, and, as a result, left both planed sides with marks which would have caused rejection of the same if delivered in that condition. The paneling was, therefore, put through a drum sanding machine which, according to the testimony of one of plaintiff's witnesses, sanded one face of the paneling. There is evidence offered on behalf of the plaintiff to the effect that the sanding was only sufficient to remove the marks left by the dull planer knives and was not sufficient to bring the merchandise to the condition known in the trade as "sanded," which seems to refer to a satin-smooth effect when properly carried out. There is, however, testimony on the part of a witness for the defendant, who saw the merchandise at the time it was imported, who testified that the sanded face was "very smooth" and, in his opinion, was satin smooth.

Unfortunately, there does not appear to be available a sample of the merchandise in its imported condition, or one representative thereof—at least none was offered at the trial. The court is, consequently, in the position of having to depend upon verbal descriptions of witnesses as to whether or not the merchandise in issue responded to that condition of wood known as "sanded," which, without question, is a condition beyond the planed, tongued, and/or grooved condition provided for by the statute, paragraph 401, *supra*, with reference to lumber.

The burden of proving the fact, under its claim under paragraph 401, *supra*, was upon the plaintiff, and we are unable, on the record

presented, to hold that it has sustained that burden by a preponderance in weight of the evidence offered.

The foregoing holding disposes of the plaintiff's claim under paragraph 401. Alternatively, plaintiff, in effect, contends that, even if sanded, the merchandise at bar consisted of no more than lumber, planed, tongued, grooved, and sanded, and, as such, did not constitute a manufacture of wood. One of plaintiff's contentions is that the merchandise consists of wood, unmanufactured, dutiable under the provision therefor in paragraph 405 of the tariff act. In view of the undisputed fact that the merchandise at bar had been subjected to processes of planing, tonguing, and grooving, it is difficult to see how a claim that it is "unmanufactured" could be sustained. We hold the claim under paragraph 405 to be untenable.

This leaves for consideration only the claim that the merchandise at bar is properly classifiable as a nonenumerated manufactured article under paragraph 1558. In essence, this is a claim that the merchandise consists of lumber or wood, further manufactured than planed and tongued or grooved, but not made into any article classifiable as a manufacture of wood—in other words, a situation requiring that the distinction be made between a material (wood), manufactured, and a manufacture of that material.

In support of plaintiff's contention, there is evidence in the record indicating that in order to use the imported paneling it had to be cut to fit the wall on which it was to be used—in other words, that it consisted of material from which manufactures or articles of wood—pine paneled walls—could be made. In support of the defendant's contention, there is evidence in the record indicating that the imported merchandise is known by a specific and distinct name—knotty pine paneling—different from the material—wood—from which it was made.

We are of the opinion that a case very much in point was decided by the United States Supreme Court in 1899, being *United States* v. *Frank Dudley*, 174 U. S. 670, 43 L. ed. 1129. The merchandise there involved consisted of sawed lumber or wood, which had been planed on one side and tongued and grooved with the use of what is known as a "flooring machine." After being so prepared, the boards were adaptable for flooring, ceiling, sheathing, etc., and were known by the specific designation of "flooring," "ceiling," or "sheathing." They had been assessed with duty under a provision in the 1894 tariff act for "manufactures of wood" and were claimed to be entitled to classification under a provision for "sawed boards, plank, deals, and other lumber, rough or dressed."

In disposing of the issue, the Supreme Court said:

Ordinarily, the fact that an article in the process of manufacture takes a new name is indicative of a distinct manufacture, as was intimated in *Tide Water Oil*

*Co.* v. *United States*, 171 U. S. 210, but we do not think it important in this case that "dressed lumber" is divisible into flooring, sheathing and ceiling, since sawed lumber is none the less sawed lumber, though in its different forms and uses it goes under the names of beams, rafters, joists, clapboards, fence boards, barn boards and the like. *In other words, a new manufacture is usually accompanied by a change of name, but a change of name does not always indicate a new manufacture.* Where a manufactured article, such as sawed lumber, is usable for a dozen different purposes, it does not ordinarily become a new manufacture until reduced to a condition where it is used for one thing only. So long as "dressed lumber" is in a condition for use for house and ship building purposes generally, it is still "dressed lumber;" but if its manufacture has so far advanced that it can only be used for a definite purpose, as sashes, blinds, mouldings, spars, boxes, furniture, etc., it becomes a "manufacture of wood." * * * [Italics added.]

Had the Court discussed the matter no further, it would appear, at this point, that while the Government's contention in this case that the acquisition of a specific name—paneling—had taken the merchandise out of the category of a lumber or wood material had been impaired, the plaintiff's contention was likewise impaired, inasmuch as it appears that the merchandise at bar has but one use, that is, in the erection of paneled walls. However, the Court went on further to elucidate and said:

* * * It follows that the words "flooring, ceiling, sheathing," do not under this act describe a new manufacture, but rather the different purposes for which sawed lumber may be used. It is much like the commercial division of lumber into "selects, common and culls," which are all lumber, but of different qualities. None of these are in reality new names, but merely specifications of the more general term "lumber." Indeed a manufacturer receiving an order for lumber could not possibly fill it to the satisfaction of his customer, without knowing the purpose for which it was designed, or the quality desired. *The fact that "dressed lumber" is ordered under the names of flooring, ceiling, sheathing, does not indicate that it is not still "dressed lumber," but rather that it is of a quality or width specially adapted to those purposes.* * * * [Italics added.]

The Court then considered the situation (which obtains here) of the case where lumber material had been so processed as to be usable only for one purpose, and said:

* * * It is true that the lumber in question was in a condition to be used for flooring without further manufacture, except such reductions in length as the dimensions of the room might require; but it was also usable for ceiling, sheathing and for similar purposes with no further alterations. *Had it so far been changed as to be serviceable for only one thing, it is possible that it might be regarded as a separate and independent manufacture, though under the case of Tide Water Oil Co. v. United States, 171 U. S. 210, this may admit of some doubt.* But while lumber planed upon one or both sides may be "dressed lumber," we think that when tongued and grooved it is still "dressed lumber," and not a new and distinct manufacture. In other words, that tonguing and grooving is an additional dressing, but it does not make it a different article. *Lumber treated in this way is still known in the trade as lumber; advertised as lumber; handled as lumber; shipped as lumber; bought and sold by the thousand feet like lumber.* [Italics added.]

From the record in the case at bar, it seems that paneling is a recognized name for a form of lumber, rather than the name of a separate

and distinct new article made from lumber, and that it is bought, sold, and used in the same manner as lumber. The distinction between lumber or wood materials and manufactures of lumber or wood, made in the *Dudley* case, *supra*, has been carried into effect by our appellate court in a number of cases.

In the case of *United States* v. *Myers & Co. et al.*, 5 Ct. Cust. Appls. 541, T. D. 35179, the court held novelty siding, which would seem to have a use very similar to that of the paneling at bar, to be "lumber which has been planed in a well-known manner" and not a manufacture of wood. So, too, matched flooring, which had been bored for nails, was held to be classifiable as lumber, rather than as manufactures of wood, in *Carr* v. *United States*, 11 Ct. Cust. Appls. 35, T. D. 38647.

In *United States* v. *C. S. Emery & Co.*, 18 C. C. P. A. (Customs) 208, T. D. 44399, the court drew the distinction between lumber material, such as flooring and ceiling, and manufactures of such materials, such as floors and ceilings, and we think that distinction is particularly applicable in the case at bar, inasmuch as what we have here is pine paneling, rather than a paneled wall.

The merchandise at bar is lumber or wood which has been manufactured beyond the condition of being only planed, tongued, and grooved, which would have left it within the purview of paragraph 401, *supra*. The additional process of manufacture, sanding, however, did not convert it into a manufacture of lumber or wood, but merely left it lumber or wood, manufactured. There being no more specific provision for such material, it takes classification and duty under the catchall provision in paragraph 1558, *supra*, for nonenumerated manufactured articles.

That claim, made by amendment of the protest, is sustained, and judgment will issue accordingly.